UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH D. HOPE,

    Plaintiff,

v.                            Case No. 8:20-cv-196-T-33AAS

AUSTIN TAYLOR, individually,
and CHARLES R. WELLS, in his
official capacity as Sheriff of
Manatee County, Florida,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of the Motions to Dismiss filed on February 25, 2020, by Defendants Charles R. Wells, in his official capacity as Sheriff of Manatee County, Florida, and Austin Taylor. (Doc. ## 10, 11). On March 3, 2020, Plaintiff Elizabeth Hope responded in opposition. (Doc. ## 17, 18). On March 10, 2020, Sheriff Wells filed a reply. (Doc. # 21). For the reasons given below, the Motions are granted in part and denied in part.

**I.    Background**

On January 24, 2020, Hope initiated this lawsuit, which arises from a dog bite. (Doc. # 1). On June 3, 2019, Hope was sitting on the patio of a residence in Bradenton, Florida.

1

(Id. at 3). At the same time, Manatee County Sheriff's Deputy Austin Taylor was on patrol with his K9, Niko. (Id.). Deputy Taylor saw a car that matched the description of a stolen vehicle, so he chased the car until it stopped at an intersection, at which point three young men left the car and began running on foot. (Id.).

Deputy Taylor also left his patrol car and "intentionally plac[ed] K9 Niko off-lead to chase" the young men. (Id.). When Deputy Taylor and Niko came to a railroad guard rail, Niko stopped, but Deputy Taylor ordered the dog to jump over the guard rail and continue the pursuit. (Id. at 4). One of the suspects jumped onto a van, and Deputy Taylor ordered Niko to continue chasing another suspect "through the same location that [Hope] was at." (Id.). Niko was still off-lead. (Id.).

Niko passed Hope and another woman and, after passing Hope, Niko "abruptly stopped, and immediately focused its' attention on [Hope][.]" (Id.). Hope alleges that Deputy Taylor failed to recall Niko or give any warnings to Hope and other nearby bystanders. (Id. at 5). As Hope alleges, "Niko then viciously attacked [her], unreasonably seizing her and subjecting her to excessive force in violation of her Fourth and Fourteenth Amendment rights." (Id.). Niko bit Hope's

2

right arm, causing "severe damage." (Id.). According to the complaint, Deputy Taylor reported that he placed himself between Niko and Hope to prevent further damage and that he was eventually able to remove Niko. (Id.).

Hope alleges that Deputy Taylor acted intentionally and/or with reckless disregard with respect to all of the events described above, and that no reasonable officer would have acted the way Deputy Taylor did. (Id. at 3-5). What's more, during the pursuit, Deputy Taylor intentionally left his radio in his patrol car. (Id. at 5). This hindered the deputy's ability to report his location to dispatch or request emergency medical services for Hope. (Id. at 6).

Hope alleges that, prior to June 3, 2019, Niko had "reported issues with recall, which were known to [Sheriff Wells], and he intentionally and/or with reckless disregard for the safety of others, continued to use K9 Niko in law enforcement." (Id. at 3). Relatedly, Hope alleges that Sheriff Wells failed to implement adequate policies, practices, customs, training, and supervision: (1) to prevent Deputy Taylor from having problems recalling Niko; (2) of K9 Niko after having prior problems with recall; (3) to prevent Deputy Taylor from having problems attaching his portable radio to his vest; and (4) of K9 dogs and handlers with the

use of e-collars (an electric shock device) to gain control of dogs who disobey commands. (Id. at 6-7).

On the basis of these allegations, Hope brings a claim under 42 U.S.C. § 1983 for unreasonable seizure in violation of the Fourth and Fourteenth Amendments against Deputy Taylor (Count One). (Id. at 8-11). She also brings a Section 1983 claim against Sheriff Wells for deliberately indifferent policies, practices, customs, training, and supervision, in violation of the Fourth and Fourteenth Amendments (Count Two). (Id. at 11-14). Finally, Hope brings an alternative negligence claim against Sheriff Wells (Count Three). (Id. at 14-15).

Sheriff Wells and Deputy Taylor each filed Motions to Dismiss for failure to state a claim, seeking dismissal of the claims against them. Hope has responded, and the Motions are ripe for review.

## II. **Legal Authority**

When considering a motion to dismiss brought under Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations

in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must limit its consideration to well-pled factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

III. **Analysis**

   A. **Hope's Fourth Amendment Claim**

Deputy Taylor and Sheriff Wells raise the same argument in their Motions — because Deputy Taylor did not intend to

seize Hope, there was no "seizure," and thus no Fourth Amendment claim. (Doc. # 10 at 4; Doc. # 11 at 2, 3).

In response, Hope argues that a seizure may occur even where the person bitten, or "seized," was not the intended person or suspect. (Doc. # 17 at 2-3; Doc. # 18 at 2-3). She contends that a "reasonable inference" may be drawn from her allegations that Deputy Taylor intended to harm Hope or other bystanders by his conduct with regard to Niko. (Doc. # 17 at 3; Doc. # 18 at 3).

Only two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980).

The federal right at issue here is a citizen's Fourth Amendment right to be free from unreasonable searches and seizures. U.S. Const., Am. IV. To assert a Fourth Amendment violation, a plaintiff must allege that (1) a seizure occurred, and (2) the force used to effect the seizure was objectively unreasonable. Troupe v. Sarasota Cty., 419 F.3d 1160, 1166 (11th Cir. 2005).

The Supreme Court has written, in the context of a concealed roadblock used in a high-speed chase, that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." Brower v. Cty. of Inyo, 489 U.S. 593, 596 (1989) (citations omitted). In other words, a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" Id. at 596-97 (emphasis in original). While the Court declined to draw "too fine a line," it said "[w]e think it is enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." Id. at 598-99.

In general, no seizure occurs when innocent bystanders are harmed by police actions. See, e.g., Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000) (no seizure occurred when a plaintiff was accidentally shot by police who were attempting to apprehend someone else); Bublitz v. Cottey, 327 F.3d 485, 489 (7th Cir. 2003) (holding that injuries caused when a police device deployed to deflate a fleeing suspect's automobile tires inadvertently caused loss

of control in a car driven by the non-suspect plaintiff were not redressable under the Fourth Amendment).

Courts take a different tack in cases involving police dogs, however. This is because "[o]nce deployed, a police-dog is generally unable to discriminate between suspects and innocent parties and is generally trained to bite whomever it encounters, facts suggesting the officer's intention to seize whomever the dog ultimately does encounter." Gangstee v. County of Sacramento, No. S-10-1004, 2012 WL 112650, at *5 (E.D. Cal. Jan. 12, 2012). Following this logic, numerous courts across the country have held that innocent bystanders bitten by police dogs while those dogs were searching for a suspect have been "seized" for purposes of the Fourth Amendment. See Rogers v. City of Kennewick, 304 F. App'x 599, 601 (9th Cir. 2008) ("Although [plaintiff] was not the actual suspect that the police officers sought, the police K-9's biting of [plaintiff] constituted a seizure under the Fourth Amendment."); Vathekan v. Prince George's Cty., 154 F.3d 173, 178-79 (4th Cir. 1998) (holding that where a police officer allowed his dog to pass through an interior door because he mistakenly believed the person inside to be a burglar, he intended that the dog find and bite the person inside, and "[b]ecause [the officer] deployed the dog to find, bite, and

8

detain the person who turned out to be [plaintiff], she was seized under the Fourth Amendment"); see also Collins v. Schmidt, 326 F. Supp. 3d 733, 740 (D. Minn. 2018) (holding that a bystander bitten by a police dog in the course of a search had been seized under the Fourth Amendment); Brown v. Whitman, 651 F. Supp. 2d 1216, 1218-19, 1225 (D. Colo. 2009) (holding that plaintiff, "who had the misfortune of being in her backyard at the time of the search," was seized when she was bitten by a police dog who was off leash and searching for two suspected carjackers).

For example, in Mancini v. City of Indianapolis, "officers released a[] . . . canine while in pursuit of a suspect fleeing a traffic stop. Hearing a commotion and hearing her dog barking, Ms. Mancini stepped out of the front door to her home. When she did so, [the] canine, who was inside of Ms. Mancini's fenced yard, attacked and mauled her." No. 16-2048, 2017 WL 4250112, at *1 (S.D. Ind. Sept. 26, 2017). The court denied the City's motion to dismiss because this seizure could be viewed as unreasonable. Id. at *5. "[Law enforcement officers] intentionally set the instrumentality in motion that caused [plaintiff's] seizure by 'directing [the] canine' onto her property and inside of her fenced yard. [Plaintiff] alleges intent in that [the]

canine is trained to seize the first person it sees (with the hope that the person would be the suspect); thus, the dog intentionally seized [plaintiff]." Id.

By way of another example, in Garcia v. City of Sacramento, "officers were pursuing a suspect, Manuel Prasad. . . . Hearing the sirens and police helicopters, Plaintiff walked over to a neighbor's backyard to speculate why law enforcement was in the neighborhood. Suddenly, Plaintiff was attacked by [K-9] Bandit." No. 10-826, 2010 WL 3521954, at *1 (E.D. Cal. Sept. 8, 2010). The court denied the City's motion to dismiss because the complaint sufficiently alleged a seizure. It explained that the officers "consciously deployed Bandit to search for and subdue Mr. Prasad. Even though Bandit attacked the wrong person, the [c]omplaint adequately alleges that Defendants had sufficient intent to use Bandit as a force to terminate freedom of movement." Id. at *2.

This Court agrees with the reasoning of these decisions and holds that Hope has sufficiently alleged a seizure for Fourth Amendment purposes. While her complaint does not specifically allege that Niko or other K-9s used by the Manatee County Sheriff's Office are trained in the bite-and-hold technique or are trained to bite the first person they encounter, such an inference in reasonable given the well-

pled allegations in the complaint. See Stephens, 901 F.2d at 1573.

Sheriff Wells attempts to distinguish this case from an earlier case out of this district involving a police dog biting the wrong person. (Doc. # 21 at 3-4). In Trammell v. Thomason, the court held that a Fourth Amendment seizure had occurred when the plaintiff, an innocent bystander, was bitten by a police dog searching for a burglary suspect. 559 F. Supp. 2d 1281, 1284-85, 1295 (M.D. Fla. 2008). As the court explained, "[o]nce Officer Dorough entered Cooper's backyard with Yacco, his intent was to apprehend [the suspect] using Yacco. Yacco is trained in the 'bite and hold' method when apprehending a suspect, thus it is clear that once Officer Dorough and Yacco entered the backyard, Officer Dorough expected Yacco to perform as he was trained to do – that is, to 'bite and hold' the suspect in Cooper's backyard." Id. at 1293.

Despite the Defendants' arguments, Trammel does not compel a different result here – nothing in that decision mandates that a Fourth Amendment seizure can occur **only** upon a case of mistaken identity. Indeed, the case law from outside this Circuit shows that not to be the case. Sheriff Wells argues that, "[u]nlike the situation here, the K-9 in Trammell

performed exactly as was intended by his handler." (Doc. # 21 at 4). But even if Niko did not perform as expected or as intended, Hope's complaint nevertheless alleges that Deputy Taylor intentionally deployed Niko to apprehend fleeing suspects, let Niko off leash in order to do so, and gave Niko multiple commands to continue the search, including through an area populated by bystanders. Thus, there was a "governmental termination of freedom of movement through means intentionally applied" because Hope was stopped "by the very instrumentality set in motion or put in place to achieve that result." Brower, 489 U.S. at 597; see also Mancini, 2017 WL 4250112, at *5; Brown, 651 F. Supp. 2d at 1225 ("[E]ven though [plaintiff] was not the intended suspect, her freedom to leave was terminated by [the officer's] intentional release of his police dog into her yard.").

As Defendants do not contest whether force was unreasonably applied or any other facet of a Fourth Amendment claim, the Court likewise limits itself to a determination of whether Hope was seized within the meaning of the Fourth Amendment. Taking the allegations of the complaint as true, she was, and Defendants' Motions to Dismiss are denied as to this claim.

## B. Hope's Fourteenth Amendment Claim

Defendants argue that Deputy Taylor's actions do not rise to the requisite level of "conscious shocking behavior needed to assert a Fourteenth Amendment substantive due process claim." (Doc. # 10 at 5-8; Doc. # 11 at 2, 3-4). Deputy Taylor contends that mere recklessness is insufficient to impose constitutional liability because officers must often make quick decisions under pressure.[1] (Doc. # 11 at 4).

The Supreme Court has explained that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Put another way, "Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not

---

[1] Deputy Taylor also argues that Hope's claim for injunctive relief must be denied, but Hope asserted in her response that she is not seeking injunctive relief against Deputy Taylor. (Doc. # 11 at 4-5l Doc. # 17 at 1).

13

under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

In a later case involving a fatal high-speed police chase, the Supreme Court relied on these precedents to determine that a substantive due process claim under the Fourteenth Amendment is "inappropriate . . . only if respondents' claim is 'covered by' the Fourth Amendment." Cty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998). The Court went on to hold that the claim there was not "covered by" the Fourth Amendment because there had been no seizure. Id. at 843-44. Accordingly, because there was no specific constitutional provision that applied, the Lewis Court went on to analyze the claim under the Fourteenth Amendment's substantive-due-process rubric. Id. at 844.

Here, Hope attempts to bring a Fourteenth Amendment due process claim based on her right to bodily integrity, along with a Fourth Amendment unreasonable-seizure claim. (Doc. # 1 at 9, 12). To the extent that these claims are one and the same because they arise out of the same event – the police dog bite – Hope may not bring a claim under the Fourteenth Amendment because she may bring this claim under a more specific constitutional provision. See Graham, 490 U.S. at 395; Lewis, 523 U.S. at 843-44; see also McCall v. Williams,

14

No. 2:10-cv-417-WHA, 2010 WL 3324407, at *2-3 (M.D. Ala. Aug. 20, 2010) ("Because [plaintiff] claims that [defendant] used excessive force in the course of a 'seizure' of [plaintiff's] person, [plaintiff's] claim must be governed by the Fourth Amendment and its 'reasonableness' standard, and [plaintiff's] Fourteenth Amendment claim is due to be dismissed.").

To the extent Hope seeks to allege this bodily-integrity claim separately, however, it still fails. "The touchstone of due process is protection of the individual against arbitrary action of government." Lewis, 523 U.S. at 845 (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). The types of governmental abuses of power that rise to the level of a substantive due process violation are those actions that "shock[] the conscience." Id. at 846-47. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to **deliberate** decisions of government officials to deprive a person of life, liberty, or property" (emphasis in original))).

15

Whether conduct that is reckless or grossly negligent suffices as the basis of a Fourteenth Amendment claim is a "closer call[]" and "demands an exact analysis of circumstances before any abuse of power is condemned as conscious shocking." Id. at 849-50. In Lewis, the Court drew a parallel between the actions at issue there (a high-speed car chase) and those actions taken during a prison riot due to the officers' inability in both situations to make measured decisions with due deliberation. Id. at 852-53; cf. Graham, 490 U.S. at 397 ("[P]olice officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving.").

The Court agrees with Defendants that Deputy Taylor's conduct here was not the sort of official government conduct that "shocks the conscience" as must be shown to state a claim under the Fourteenth Amendment. The Court agrees with the well-reasoned analysis offered in Mancini on this point:

> The "conscience-shocking" standard with its intent requirement is the correct standard for police chases – on foot or otherwise – under the Fourteenth Amendment. Both parties agree that [plaintiff] was an innocent bystander and [the police] did not intentionally set out to harm her with deliberate action. The allegation that general knowledge that the police canine is trained to violently attack and could potentially harm someone is not sufficient to prove [the officers'] intent to harm

[plaintiff] under a shocks-the-conscience standard.

Mancini, 2017 WL 4250112, at *3. For these reasons, Hope's Fourteenth Amendment claim is dismissed.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) The Motions to Dismiss filed by Defendants Charles R. Wells, in his official capacity as Sheriff of Manatee County, Florida, and Austin Taylor (Doc. ## 10, 11) are **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

(2) Defendants are directed to file their answers to the complaint within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 3rd day of April, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE